IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Epluno Global Services, LLC, a Delaware Limited Liability Company | ) ) ) | C.A. NO.: 21-cv-_____ |
| Plaintiff, | ) ) ) | (Non-Jury) |
| vs. | ) ) | |
| Bluhorne, LLC, a Florida Limited Liability Company; Remington Schmidt; Todd Wright, individually and d/b/a Wright Business Management; and Kenley Cervera, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**COMPLAINT**
**(Federal Question Jurisdiction 28 U.S.C. § 1331)**

Plaintiff Epluno Global Services, LLC, a Delaware Limited Liability Company complaining of the Defendants Bluhorne, LLC, a Florida Limited Liability Company; Remington Schmidt; Todd Wright, individually and d/b/a Wright Business Management; and Kenley Cervera, would respectfully allege and show unto this Honorable Court as follows:

**PARTIES AND JURISDICTION**

1. Epluno Global Services, LLC ("Plaintiff") is a Delaware Limited Liability Company, doing business in the State of South Carolina and is not required to obtain a Certificate or Authority pursuant to S.C. Code Ann. § 33-15-101. Its members are residents of the States of Ohio, South Carolina, North Carolina and California. Epluno Global Services has a Certificate of Authority for Ohio.

2. Defendant Bluhorne, LLC ("Bluhorne") is a Florida Limited Liability Company, with members Kenley Cervera, Todd Wright and Remington Schmidt, doing business in the State

of South Carolina and is not required to obtain a Certificate or Authority pursuant to S.C. Code Ann. § 33-15-101.

3. Defendant Remington Schmidt ("Schmidt"), upon information and belief, is a resident of the State of California and a Member of Bluhorne.

4. Defendant Todd Wright individually and d/b/a Wright Business Management ("Wright") is a resident of the State of South Carolina and is a Member of Bluhorne.

5. Defendant Kenley Cervera ("Cervera") is a resident of the State of Florida, a Member of Bluhorne and its Operations Director.

6. Jurisdiction is proper in the United States District Court pursuant to 28 U.S.C. § 1331, as this civil action arises under the laws of the United States pursuant to Defendants' violations of 18 U.S.C. § 1962(c) as alleged herein.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

8. Jurisdiction is further proper in this Court as this matter arises out of a series of communications and a contract between Epluno and Bluhorne, including communications which occurred over electronic wires and involved a domestic wire within the State of South Carolina.

9. The court has supplemental jurisdiction of any non-federal question claims under 28 U.S.C.A. § 1367.

10. At all material times, Plaintiff was and now is a limited liability company duly organized and existing under the laws of Delaware, and is engaged in the business of purchasing Personal Protection Equipment ("PPE") from importers being brought to the United States by ocean-going vessels.

11. At all material times, Defendant Bluhorne represented that it was the owner of certain PPE being shipped from China to Long Beach California, that Plaintiff could purchase for resale or distribution in the United States.

12. Due to COVID-19, former President Donald J. Trump declared a State of Emergency for the United States under various Federal Acts and specifically issued and Executive Order to ensure that the U.S. healthcare system is able to surge capacity and capability for outbreak response by requiring that all such health and medical resources—including ventilators, as well as personal protective equipment (PPE) such as masks, gloves, and other medical supplies—are properly distributed to health workers on the front lines of the response, including the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5122).

13. As a result of the State of Emergency and the continual need for PPE, many companies including Bluhorne have purported to have PPE for sale.

14. As a result of the State of Emergency and the continual need for PPE, companies such as Plaintiff have attempted to procure PPE for companies in need of the same.

15. Upon information and belief, at all material times, Defendant Bluhorne was and still is a limited liability company, which has represented that it was in possession of PPE, and other goods and was and is still doing business within the court's jurisdiction, by and through its member Todd Wright d/b/a Wright Business Management.

16. Upon information and belief, Defendant Wright is an individual who conducts business within the court's jurisdiction, and does business as Wright Business Management, purporting to act for and on behalf of Defendant Bluhorne.

17. Upon information and belief, Defendant Wright d/b/a Wright Business Management is and at all material times was a Member of Defendant Bluhorne, individually making representations and taking actions for and on its behalf.

18. Upon information and belief, Defendant Schmidt is an individual who conducts business within the court's jurisdiction, and does business as Ravenwood Financial.

19. Upon information and belief, Defendant Schmidt d/b/a Ravenwood Financial is and at all material times was a Member of Defendant Bluhorne, individually making representations and taking actions for and on its behalf.

20. Upon information and belief, Kenley Cervera is the Managing Member of Bluhorne and at all material times executed documents for and on behalf of Bluhorne and conducted business within this Court's jurisdiction.

21. There exists, and at all times herein mentioned there existed, a unity of interest and ownership between Defendants Wright, Cervera and Schmidt collectively worked together through the entity Bluhorne to scheme, defraud and convert the property of Plaintiff for their own purpose in violation of the law.

22. The actions of the three individuals, as representatives of the limited liability company Bluhorne, would permit an abuse of the limited liability statutes and would sanction fraud and promote injustice given the tortious and fraudulent conduct of said Defendants as alleged more particularly below.

23. Specifically, on or about December 1, 2020 Defendant Schmidt represented to Bill Banham of Protective Shield that he had 4 million boxes of Medcare Nitrile Gloves, with 50 more weeks of product arriving at 2 million boxes per week.

24. On December 16, 2020, Defendant Schmidt represented to Kory McMullen, Chief Executive Officer for Protective Shield and a broker representing the Defendants, that Defendant Bluhorne did in fact have PPE and Bluhorne provided an SGS, which was authenticated by a third-party.

25. At all times material hereto, Protective Shield contacted Plaintiff and communicated Defendant's Schmidt's representations.

26. On December 17, 2020, Plaintiff, based upon Defendant Schmidt's representations and authentication of the SGS by Protective Shield, provided an Irrevocable Corporate Purchase Order (ICPO), to Bluhorne through Kory McMullen.

27. On December 18, 2020, Plaintiff and Bluhorne (through Defendant Cervera) executed the ICPO. (A true and correct copy of the ICPO is attached as **Exhibit A**).

28. On December 20, 2020 at 9:43 am (PDT), Remington Schmidt again represented to Plaintiff through Kory McMullen that the product would be available on the 28th, if the Plaintiff made its deposit.

29. Subsequently, on or about December 20, 2020, Plaintiff entered into a contract with Bluhorne for the same PPE set forth in the ICPO, with additional terms and conditions (the "Contract"). (A true and correct copy of the Contract is attached as **Exhibit B).**

30. The ICPO and subsequent Contract were for Medcare Nitrile Exam Gloves, 100 per box, 2,000,000 boxes at $10.50 per box, totalling $21,000,000.00, requiring a $5,250,000.00 deposit to insure that Plaintiff would be entitled to the PPE, items specifically subject to the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5122).

31. Included in the Contract was a requirement that the wired deposit be made on or before December 21, 2021, at 3pm, with the wire being sent to Defendant Wright d/b/a Wright

Business Management located at 20161 Middle Street, Suite 215, Sullivans Island, South Carolina, via City National Bank in Atlanta, Georgia.

32. The Email confirmation was to be sent to Defendant Cervera at kc@buhorne.com.

33. The Contract contained a $420,000.00 penalty if the deposit was not timely received from Plaintiff, and a $420,000.00 penalty if Plaintiff did not receive the goods from Bluhorne.

34. The balance of the monies $15,750,000.00 were to be paid within 24 hours of the PPE (Goods, Inventory) clearing customs.

35. On December 23, 2020, Plaintiffs were waiting on an executed Escrow Agreement in order for Plaintiffs to place the deposit in escrow with Stuart H. McCluer, a South Carolina Attorney, as well as the SGS report required.

36. On December 23, 2020, the Escrow Agreement was executed and transmitted across wire via the internet.

37. Additionally, Defendants required the monies be released from escrow into their possession, specifically with Defendant Todd Wright, per the terms of the contract, before they would provide the SGS Report and necessary documentation for Plaintiff to provide to its customer.

38. On or about December 23, 2020, after the execution of the Escrow Agreements, Defendant Schmidt engaged in telephone conversations with a member of the Plaintiff to negotiate for a Waiver Agreement regarding the December 21, 2021, 3pm deadline for the wire, with Schmidt indicating that the PPE was arriving on December 28, 2020 in Long Beach, California.

39. On December 23, 2020, the parties executed the Waiver Agreement, which was transmitted via wire across the internet.

40. On December 24, 2020, based upon the Contract and representations of Defendant Schmidt, Wright and Cervera purportedly acting for and on behalf of the Enterprise, Bluhorne, Plaintiff through its member, John T. Gramling III, permitted Defendant Bluhorne's attorney, Stuart H. McCluer, a South Carolina licensed attorney serving as the Escrow Agent to wire monies to Wright Business Management's account, which receipt was confirmed by Defendant Todd Wright, by electronic mail.

41. Specifically, from December 24, 2020 through December 26, 2020, via a series of messages on the application "WhatsApp" Plaintiff requested of Bluhorne, more specifically Remington Schmidt, documents necessary to complete the transaction and pay the balance of the contract.

42. On December 24, 2020, Plaintiff requested Protective Shield CEO, Kory McMullen assist with obtaining the necessary documents from Protective Shield's client. A continued series of conversations went back and forth between Kory McMullen and Remington Schmidt through the smart phone application WhatsApp.

43. On December 28, 2020, Remington Schmidt indicated based upon the timing of the wire, that the December 28, 2020 shipment would not be available to Plaintiff, and that December 28, 2020, "would be [the] startup day."

44. On December 30, 2020, Defendant Schmidt indicated that the PPE Plaintiff would be entitled to, was only 500,000 boxes in place of the 2 million per the IPCO and Contract, arriving January 9, 2021, set to arrive in California.

45. On January 1, 2021, Defendant Schmidt represented that the 500,000 boxes would arrive on January 10, 2021.

46. On January 2, 2021, Defendant Schmidt represented that he was sending an invoice and documents for the 500,000 boxes.

47. On January 4, 2021, Plaintiff again requested the documents.

48. On January 5, 2021, Defendant Schmidt represented that he thought the documents had been sent.

49. On January 6, 2021, Plaintiff again requested the documents and Defendant responded that "All is well the vessel is on it's[sic] way, just switched shipments for you had a little to deal with in that realm but it should have been sent to the attoney[sic]"

50. On January 6, 2021, Plaintiff caused its attorney to submit notices of breach on January 6, 2021, to Stuart McCluer, escrow agent and attorney for Defendant Bluhorne.

51. In response to the January 6, 2021 notice, on January 7, 2021, Defendant Bluhorne, through Defendant Wright submitted two Bills of Lading ("BOL") by email to Plaintiff's transaction attorney Christopher Tilson.

52. Thus on January 7, 2021, Defendant Wright for Defendant Bluhorne, via the internet, provided Bills of Lading ("BOL"), which on their face appeared legitimate, however the BOLs had in fact been altered and were merely artifices created to defraud and further the scheme of the Defendants.

53. Specifically, Bluhorne, provided a Matson bill of lading with Booking no. 9632289 ("Bill of Lading") shipping from Qingdao, China to Long Beach, California, evidencing a shipment of *Non-Sterile Power Free Synthetic Nitrile Protection Gloves*. According to the Bill of Lading, the said PPE was to be transported aboard the vessel, Kaimana Hila.

54. Upon information and belief, according to the Matson tracking system, the Containers linked to the Booking Numbers provided on January 7, 2021, had already safely

transported the PPE aboard the vessel of Navos Verona to Long Beach, California on December 30, 2020, where the containers (MATU270365-1 and MATU270303-4) were emptied on or before January 5, 2021 and January 7, 2021 respectively.

55. On January 7, 2021, Defendant Schmidt represented that the vessel "Had some issues with ice…".

56. On January 8, 2021, Kory McMullen of Protective Shield communicated to Defendant Schmidt that the BOL's were invalid.

57. Defendant Schmidt indicated the Kory McMullen did not know how to read the documents.

58. Since January 15, 2021, Plaintiff has made repeated attempts to have documentation provided for the PPE which it contracted for, or its deposit returned, which Defendants have refused, including the second Notice of Default.

59. Following the January 15, 2021 notice, Defendant Bluhorne through Defendant Schmidt claimed that the shipment had been held up by an Act of God, and offered to return money less the penalty contained in the contract.

60. Plaintiffs requested a return of their money without penalty or in the alternative proof of the Act of God.

61. Defendant Schmidt represented the PPE would set sail on January 17, 2021, however, Defendants never provided documentation to substantiate the claim.

62. On January 20, 2021, Defendant Cervera again offered to send documentation regarding the "next shipment" or offering to return the deposit less a $450,000.00 penalty.

63. Defendants provided neither the return of the money nor any further documentation, and have engaged in wrongful, illegal and tortious conduct continually ignoring notices of default, demands for either proof of ability to perform or return of the deposit.

64. On the basis of Defendants' wrongful and tortious conduct, and each of them, including the tender of the fraudulent bill of lading for purposes of converting and keeping the monies of the Plaintiff, have caused Plaintiff harm.

65. Notwithstanding Plaintiff was able to mitigate its damages and cancel its pending contracts in order to avoid any liability for a judgment to third-party purchasers, Plaintiffs continue to be harmed as Bluhorne has retained and refused to return the Deposit of $5,250,000.00.

## FOR A FIRST CAUSE OF ACTION
### (RICO 18 U.S.C. § 1962(c))

66. Plaintiff hereby restates and alleges all preceding paragraphs as if repeated herein verbatim.

### The Enterprise

67. Defendant Remington Schmidt, Todd Wright and Kenley Cervera devised a scheme to conduct and participate therein, for the purpose of wrongfully obtaining monies from Epluno Global Services, LLC, by and through an enterprise known as Defendant Bluhorne, LLC, an enterprise whose activities affect interstate commerce (the "Enterprise").

68. By and through the Enterprise, Defendants Schmidt, Wright and Cervera have engaged in a pattern of racketeering activity for the unlawful purpose of intentionally defrauding Epluno Global Services, LLC.

69. Defendant Schmidt did represent that he was in the Possession of Personal Protective Equipment ("PPE") and required a contract to sell the same through its entity Bluhorne,

LLC was in fact not available for purchase, and providing, in furtherance of the scheme information that he knew was materially false.

70. Defendant Schmidt did contract to perform such activities and require a deposit of Five Million Two Hundred Fifty Thousand and 00/100 Dollars ($5,250,000.00), knowing that such PPE was in fact not available for purchase.

71. Defendant Wright did arrange to receive the deposits from escrow in furtherance of the scheme.

72. In furtherance of this scheme, Defendants Schmidt, Wright and Cervera through such representations and promises convinced Epluno to contract with Bluhorne, which Defendants Schmidt, Wright and Cervera represented was a business experienced and licensed to import Personal Protection Equipment and provided references, in furtherance of their scheme.

### Pattern of Racketeering

73. Defendants Schmidt, Wright and Cervera did agree to and did conduct and participate in such conduct of the Defendant Enterprise's affairs through a pattern of racketeering activity for the unlawful purpose of intentionally defrauding Plaintiffs.

74. Defendants lured Plaintiff into a contract, representing falsely that it was ready, willing and able to conduct business in order to fraudulently obtain money from the Plaintiff, and using artifice's in the continuation of the scheme to defraud.

75. Defendants have used Plaintiff's money for their own purposes, and the business of the Enterprise, through Predicate Acts.

### Predicate Acts

76. Pursuant to and in furtherance of their fraudulent scheme, in the pursuit to contract, during the contract and refusal to honor the contract for PPE protected by the Robert T. Stafford

Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5122), the Defendants did violate Federal Law engaging in multiple predicate acts to wit:

(A) provided BOL's which had been altered or forged in order to defraud the Plaintiffs in violation of 18 U.S.C. § 659;
(B) engaged in wire fraud in violation of 18 U.S.C. § 1341;
(C) engaged in wire fraud in violation of 18 U.S.C. § 1343; and
(D) engaged and used interstate travel in aid of racketeering enterprises in violation of 18 U.S.C. § 1952.

77. The racketeering activities above constitute a pattern of racketeering activity over the course of two months pursuant to 18 U.S.C. § 1961(5).

78. Defendants Schmidt, Wright and Cervera have directly and indirectly conducted and participated in the conduct of the Enterprises' affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962.

79. As a direct and proximate result of such activities and violations of 18 U.S.C. § 1962, Plaintiff has suffered injury to its business operations including but not limited to loss of use of its deposit, loss of business opportunities to sell to end users, loss of business opportunities to purchase from legitimate suppliers, and loss of reputation.

80. Plaintiff seeks this Court to render judgment against the Defendants for actual damages, treble damages and attorneys fees to be determined by the Court.

**FOR A SECOND CAUSE OF ACTION**
**(FRAUD IN THE INDUCEMENT)**

81. Plaintiff hereby restates and alleges all preceding paragraphs as if repeated herein verbatim.

82. The representation that the Defendants made were that the Defendants was ready, willing and able to deliver the PPE, having access to 2,000,000 boxes of Medcare Nitrile Gloves that were to arrive on December 28, 2020.

83. The representations were false and were material, and Defendants knew that at the time Defendant made the representations that they were false.

84. Defendants knew that they did not possess the PPE, but represented that they did possess the same and that they had the rights to sell the same to Plaintiff.

85. At no time did Defendants either have the PPE alleged, or if they did, Defendants knowingly at the time they entered into the Contract and accepted Plaintiff's deposit, knew that they did not intend to provide the PPE to the Plaintiff on December 28, 2020.

86. The initial representations, that they were ready, willing and able to deliver 2,000,000 boxes of Nitrile Gloves to Plaintiff, and further that the same would arrive on or about December 28, 2020, and that a deposit was necessary to ensure that the same were set aside for Plaintiff, induced Plaintiff to rely upon the representations, and to enter into the Contract and authorize the deposit.

87. Defendants knew that the representations were false.

88. Defendant intended for Plaintiff to rely upon the representations and to cause Plaintiff to enter into a Contract with Bluhorne.

89. Plaintiff was ignorant to the falsity of the representations and relied upon their truthfulness signing the Contract, the Escrow Agreement, the Invoice and the Waiver, and depositing $5,250,000.00 into escrow, and then authorizing the distribution of the escrow to Defendant Wright, as agent for Bluhorne, as a deposit for the PPE, pursuant to the Contract.

90. Plaintiff had a right to rely on the representations made by Defendant, which were false and which fraudulent representations described above induced Plaintiff to enter into the Contract and deposit the $5,250,000.00.

91. As a result of Plaintiff's reliance, Plaintiff has suffered and will continue to suffer actual and consequential damages in excess of $5,250,000.00.

92. Plaintiff seeks actual and punitive damages in an amount to be determined by the Court, not less than $10,000,000.00.

## FOR A THIRD CAUSE OF ACTION
### (NEGLIGENT MISREPRESENTATIONS)

93. Plaintiff hereby restates and allege all preceding paragraphs as if repeated herein verbatim.

94. Defendant made false representations to Plaintiff that it had 2,000,000 MedCare Nitrile Gloves arriving in port at Long Beach California on December 28, 2020, that it would sell to Plaintiff.

95. Defendant falsely represented that was ready, willing and able to sell the PPE.

96. Defendant had a pecuniary interest in falsely representing that it possessed the PPE.

97. Under the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5122), as the PPE is protected under the Act, Defendant owed Plaintiff in making sure that it communicated truthful information to Plaintiff.

98. Defendant breached that duty by failing to exercise due care.

99. Plaintiff justifiably relied to its detriment on the false representations of the Defendant.

100. Plaintiff has suffered and will suffer actual and consequential damages in excess of $5,250,000.00, in an amount to be proven and determined by the Court.

101. Plaintiff further seeks punitive damages.

## FOR A FOURTH CAUSE OF ACTION
### (BREACH OF CONTRACT)

102. Plaintiff hereby restates and alleges all preceding paragraphs as if repeated herein verbatim.

103. On or about December 18, 2020, the parties executed an ICPO. (See Exhibit A).

104. On or about December 20, 2020, the parties entered into a Contract for Plaintiff to purchase PPE from Defendant Bluhorne. (see **Exhibit B**).

105. The Contract was modified by a waiver, a copy of which is attached as **Exhibit C**.

106. The Contract required Defendant to supply to Buyer:

   a. Original certificate of quality issued by SGS, an independent inspection company;
   b. Original certificate of origin;
   c. Bill of lading, airway bill or other transport documents;
   d. Original commercial invoice;
   e. Packing List; and
   f. Certificate of freight prepaid and clear.

107. The Contract was breached by Defendant Bluhorne's failure to provide the required PPE documents or to deliver the PPE pursuant to the Contract.

108. After Defendant failed to provide the documents or PPE, Plaintiff placed Defendant on notice.

109. Defendant by and through its agents Defendant Schmidt and Todd Wright provided a fraudulent BOL, in further breach of the Contract.

110. Plaintiff demanded its return of the Deposit, which Defendant has refused, in further breach of the Contract.

111. As a direct and proximate result of the breaches, Plaintiff has and will suffer damages in an amount not less than $5,250,000.00, plus the $420,000.00 penalty for non-performance, to be proven at trial before the Court, plus consequential damages including interest and loss of business.

## FOR A FIFTH CAUSE OF ACTION
### (BREACH OF CONTRACT ACCOMPANIES BY A FRAUDULENT ACT)

112.  Plaintiff hereby restates and alleges all preceding paragraphs as if repeated herein verbatim.

113.  As set forth above, Defendant Bluhorne breached the Contract.

114.  As an alternative to the other allegations contained in this Complaint, and for the purpose of this Cause of Action, and no other, Defendant Bluhorne by providing the fraudulent BOL, did exhibit its intent to defraud Plaintiff, which accompanied its breach of Contract.

115.  Whether Defendant Bluehorne ever had the ability to perform the Contract, Defendant alleged an event of Force Majeure and provided a video and a fraudulent BOL, produced by Defendants Schmidt and Wright in order to avoid repaying Plaintiff the deposited $5,250,000.00, when Plaintiff demanded the documents or the return of its deposit in breach of the Contract.

116.  As a direct and proximate result of the fraudulent actions of the Defendants, Plaintiff has suffered actual and consequential damages and seeks punitive damages.

## FOR A SIXTH CAUSE OF ACTION
### (UNFAIR AND DECEPTIVE TRADE PRACTICES)

117.  Plaintiff hereby restates and alleges all preceding paragraphs as if repeated herein verbatim.

118.  As set forth above, Defendants engaged in a common scheme to defraud Plaintiff out of money.

119.  In violation of 15 U.S.C. § 45 and S.C. Code Ann. § 39-5-10, et seq., Defendants were engaged in unfair or deceptive acts or practices.

120. Such acts or practices were in trade or commerce and have caused Plaintiff harm by virtue of Defendants wrongfully retaining and holding the deposit for PPE, which Defendants cannot show they could provide, and for which Defendants created a false BOL, in furtherance of their scheme.

121. Defendants' conduct was willful and the Defendants knew or should have known that such actions were in violation of S.C. Code § 39-5-20 and the corresponding Federal act.

122. Moreover, Defendants wrongful actions are capable of repetition and affect the public interest as the items being used or represented in the scheme are PPE, protected by the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5122).

123. Plaintiff has suffered monetary loss in the amount of $5,250,000.00 and seeks treble damages, plus attorney's fees pursuant to the S.C. Code § 39-5-140, or alternatively under 15 U.S.C. § 57(b), the return of its deposit.

## FOR A SEVENTH CAUSE OF ACTION
### (CONVERSION)

124. Plaintiff hereby restates and alleges all preceding paragraphs as if repeated herein verbatim.

125. At all times hereunder, Plaintiff believed it was entering into a legal and legitimate transaction with the Defendants.

126. When Defendants were unable to complete the transaction, rather than return the monies to Plaintiff, Defendants illegally detained the funds of the Plaintiff for their own use and unauthorized assumption of the same, exclusive to the rights of the Plaintiff.

127. Specifically, Defendants have failed and refused to return the monies, and by artifice and deceit continued to retain the same, constituting conversion of the Plaintiff's property in the determinative sum of $5,250,000.00.

128. Such actions of the Defendants have been willful, reckless and in conscious disregard of the rights of Plaintiff.

129. Plaintiff seeks actual and punitive damages in an amount to be determined by the Court for such actions.

WHEREFORE, having fully Complained of the Defendants, Plaintiff prays that this Court enter a Judgment against the Defendants for Defendants' conduct for actual and consequential in an amount not less than $5,250,000.00, for consequential damages and for punitive damages, as well as for costs. Plaintiff asks for a jury trial on such matters triable, for costs and for such other and further relief as this Court deems appropriate.

February 24, 2021　　　　　　　　　　　　SMITH, CURRIE & HANCOCK LLP

**s/ Matthew E. Cox**
**Matthew E. Cox, Fed ID #7531**
**1325 Park Street, Suite 200**
**Columbia, SC  29201**
**(803) 999-1273**
**mecox@smithcurrie.com**

*Attorneys for the Plaintiff*