IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Epluno Global Services, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>Bluhorne, LLC, a Florida Limited Liability Company; Remington Schmidt; Todd Wright, individually and d/b/a Wright Business Management; and Kenley Cervera,<br><br>Defendants. | C.A. NO.: 7:21-cv-00566-DCC |

**PLAINTIFF'S RESPONSE TO DEFENDANT BLUHORNE, LLC'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PENDING ARBITRATION**

Defendant Bluhorne, LLC ("Bluhorne") moved this Court on July 2, 2021 to dismiss the Complaint of Plaintiff Epluno Global Services, LLC ("Epluno") because Plaintiff's claims against Bluhorne are subject to arbitration in Miami-Dade County, Florida, or in the alternative, moved for an Order of this Court staying this action pending arbitration pursuant to 9 U.S.C. **[Doc 22]**. Plaintiff files this Response in accordance with Local Civ. Rules 7.05 and 7.06 (D.S.C.).

**STATEMENT OF THE CASE**

On February 24, 2021, Plaintiff filed a Complaint initiating this action, seeking damages against the Defendants Bluhorne, LLC ("Bluhorne" or "Defendant"), Remington Schmidt, Todd Wright, individually and d/b/a Wright Business Management, and Kenley Cervera for claims of: (1) RICO 18 U.S.C. § 1862(c); (2) Fraud in the Inducement; (3) Negligent Misrepresentations; (4) Breach of Contract; and (5) Breach of Contract Accompanied by a Fraudulent Act, (6) Unfair and Deceptive Trade practices; and (7) Conversion in an amount no less than $5,250,000.00 together

1

with consequential damages and punitive damages as well as other costs **[Doc 1, Compl.]**.

On April 15, 2021, Plaintiff filed Requests for Entry of Default against Kenley Cervera, Todd Wright, and Remington Schmidt (collectively "Individual Defendants") for failure to file a claim and answer within the allowed time by law **[Doc. 8, 9, and 11]**. The Individual Defendants were subsequently entered into default by the Clerk of this Court **[Doc. 10 and 11].** On May 14, 2021, the Individual Defendants filed a Motion to Set Aside Entries of Default **[Doc. 16].** On May 28, 2021, Plaintiff filed its Response to the Individual Defendant's Motion to Set Aside Default **[Doc. 18]**. In its Motion, as an alternative remedy, Plaintiff requested that this Court stay the present case and reserve its ruling on Default as to the Individual Defendants until Defendant Bluhorne and Plaintiff arbitrate the matter in Florida **[Doc. 18 at page 14]**.

## POSITION OF THE PLAINITFF

Plaintiff would submit to this Court that the contract between Plaintiff and Defendant for Medcare Nitrile Gloves is invalid due to illusory promises or fraudulent inducement. Plaintiff requests that this Court stay the present case pending arbitration solely between Plaintiff and Defendant Bluhorne as to the voidability of the Contract, with the right to enforce or move to vacate any Award pursuant to the FAA. If the Arbitrator voids the underlying contract, then the claims in the Complaint should be heard in this Court as to Defendant Bluhorne, and proceed with damages against the defaulted Individual Defendants.

## STATEMENT OF FACTS

This case is about immoral individuals using a company in an attempt to fleece money from a company trying to fulfill needs during the COVID-19 pandemic. On December 1, 2020, Individual Defendant Schmidt misrepresented to Protective Shield, the broker representing Plaintiff that Bluhorne had four million boxes of Medcare Nitrile Exam gloves, with two million

boxes **per week** arriving for 50 weeks subsequent to this misrepresentation **[Doc. 1, ¶ 23, 24]**. Protective Shield, in turn, provided Plaintiff with Bluhorne's contact information **[Doc. 1, ¶ 25]**. On December 18, 2020, Bluhorne submitted to Plaintiff an Irrevocable Corporate Purchase Order ("ICPO") for the total of $21,000,000.00 to Plaintiff for 2,000,000 boxes of Medcare Nitrile Exam gloves **[Doc. 1, Ex. A]**. On December 20, 2020, Individual Defendant Schmidt represented to Plaintiff that the shipment would be available on December 28, 2020, if Plaintiff made its deposit **[Doc. 1, ¶ 28]**. Unbeknownst to Plaintiff, this was one of many false statements to be made by Individual Defendant Schmidt and the other Defendants. Further, Plaintiff was never informed that Defendant Bluhorne had a purchase agreement with McCreless Enterprises, LLC ("McCreless") for the gloves where Plaintiff was presented as a potential buyer. *See* **[Doc. 18-17, ¶ 8; Doc. 18-23, ¶ 5; Doc. 16-1, ¶¶ 2-5]**.

On December 20, 2020, and due to the misrepresentation that the 2,000,000 boxes of gloves would be available on December 28, 2020, Plaintiff and Defendant entered into a contract for the gloves set forth in the ICPO (the "Contract"). **[Doc 1, Ex. B]**. Defendant required a $5,250.000.00 wire deposit for the gloves by December 21, 2020, with the remaining balance of $15,750,000.00 to be paid within 24 hours of the gloves clearing customs and subject to the other requirements of the Contract. **[Doc. 1, ¶¶ 30-34]**. The Contract also provides for a $420,000.00 penalty if the deposit was not timely received from Plaintiff **[Doc. 1, ¶ 33].** Per the terms of the Agreement, Defendant Bluhorne required the money be released from escrow into their possession before it provided the SGS Report and documentation to Plaintiff **[Doc. 1, ¶ 37]**. On or about December 23, 2020, after the Escrow Agreement was executed, Individual Defendant Schmidt engaged in telephone conversations with Plaintiff to negotiate a Waiver Agreement regarding the December 21, 2021, deadline for the deposit where Individual Defendant Schmidt again

represented that the gloves were arriving on December 28, 2020, in Long Beach, California **[Doc. 1, ¶¶ 35-38]**. The Waiver Agreement was executed on the same day **[Doc. 1, ¶ 39]**. Individual Defendant Schmidt consistently kept pressing Plaintiff for the deposit money, with the lure of the product arriving on December 28, 2020.

The money that was held in escrow was wired to Wright Business Management's bank account on December 24, 2020 **[Doc. 1, ¶ 40]**. Individual Defendant Schmidt consistently kept pressing Plaintiff for the deposit money, with the lure of the product arriving on December 28, 2020. However, after receiving the deposit, he made himself scarce, until his December 28, 2020, reveal that Plaintiff had missed the boat, and that, due to the timing of the wire, the December 28, 2020, shipment would not be available to Plaintiff. **[Doc. 1, ¶¶ 41-43]**.

On December 30, 2020, six days after Defendant Bluhorne received the $5,250,000.00, the story changed and Defendant Schmidt notified Plaintiff that Defendant would only be able to quickly provide 500,000 boxes instead of the two million boxes agreed upon pursuant to the ICPO and the Agreement, set to arrive in California on January 9, 2021. **[Doc. 1, ¶ 44]**. Based upon this representation, Plaintiff agreed to reduce its order from 2,000,000 to 500,000.

On January 1, 2021, Individual Defendant Schmidt told Plaintiff that the 500,000 boxes would arrive in California on January 10, 2021. **[Doc. 1, ¶ 45]**. Plaintiff requested the documentation pursuant to the Contract. On January 7, 2021, the Individual Defendants (Defendant Wright) submitted two Bills of Lading ("BOL") to Plaintiff. These BOLs had been altered to continue Defendant's fraudulent inducement and bad faith tactics. **[Doc. 1, ¶¶ 51-57]**. At that point, Plaintiff continued to make attempts to receive valid documentation for the gloves or to get its deposit back, both of which neither Defendant Bluhorne nor the Individual Defendants have never provided **[Doc. 1, ¶ 58].**

Finally, on May 11, 2021, two and a half months after the filing of the Complaint, and at the tail end of the COVID-19 pandemic, Defendants' counsel contacted Plaintiff's counsel that 66,000 out of the 500,000 boxes for Plaintiff had been received. Not only was this not the amount agreed upon, the 66,000 gloves were found defective **[Doc 18-11, ¶¶ 37-38]**. The entire timeline, from Defendant's initial communication to Protective Shield through Defendants' counsel's communication to Plaintiff's counsel, shows that Defendant and Individual Defendants orchestrated a fraudulent scheme with neither the ability to perform nor the intent to follow through with the promise to provide the materials to Plaintiff in a commercially reasonable or timely manner, if at all. Due to the plethora of misrepresentations, illusory promises, and fraudulent behavior, the Agreement and the Arbitration Agreement should be invalidated.

## ARGUMENT

This Court should not grant Defendant Bluhorne's Motion to Dismiss Plaintiff's Complaint. This Court should not grant the Individual Defendants' implied argument to let the Individual Defendants out of default. While Plaintiff does agree that Federal law favors Arbitration, nevertheless, this Court should simply stay this matter for the arbitrator to determine if the Contract is void for the reasons set forth below. Plaintiff would submit that this Court stay this matter, pending Arbitration solely between Plaintiff and Defendant Bluhorne as to the voidablility of the Contract. Should the Arbitrator void the Contract, the claims in the Complaint should be heard in this Court as to Defendant Bluhorne, and damages as to the defaulted Defendants.

### I.     The Agreement is Voidable

The Individual Defendants' fraudulent scheme and devious and surreptitious actions as a matter of inducement laid the groundwork for Plaintiff to enter into the Contract. It is clear that

the Individual Defendants lacked the ability to distribute any gloves to Plaintiff on December 28 or the subsequent months after. Despite consistently lying to assure Plaintiff that the materials would arrive and providing two fabricated Bills of Lading as artifices to further their scheme, Defendants simply took Plaintiff's money and have refused to return it. Defendants fraudulently induced Plaintiff to enter into the Contract knowing full well it could not and would not be able to follow through with the promise, simply in an effort to convert Plaintiff's money, which it did and continues to use today. Despite the intrinsic evidence contained in the communications between Plaintiff and Defendant Schmidt that Plaintiff rushed to get a deposit of $5,250,000 in for product on or before December 28, 2020, the Contract contains no date of performance by Bluhorne.

### a. Defendants' Illusory Promises Coerced Plaintiff to Enter into the Agreement

The Illusory Promise Doctrine "instructs courts to avoid construction of contracts that would render promises illusory because such promises cannot serve as consideration for a contract." *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 440, 135 S. Ct. 926, 936 (2015). "Where an illusory promise is made, that is, a promise merely in form, but in actuality not promising anything, it cannot serve as consideration. Even if it were recognized by law, it would impose no obligation because the promisor always has the power to keep his promise and yet escape performance of anything detrimental to himself or beneficial to the promisee. In such cases, where the promisor may perform or not, solely on the condition of his whim, his promise will not serve as consideration." Restatement (Second) of Contracts § 77, cmt. A, illus. 1, 2 (1981).

Defendant Bluhorne knew that it could not provide two million boxes of gloves to Plaintiff on December 28, 2020, or ever. It then backpedaled to 500,000 boxes after the Contract was already in place for two million boxes. Despite Defendant Schmidt's representation that they had

2,000,000 boxes of gloves coming in each week, Defendant Bluhorne **never** followed through with its promise that it would provide two million boxes or even the reduced amount of 500,000 boxes to Plaintiff. Defendant Bluhorne knew it would never provide this amount to Plaintiff. This illusory promise made by Defendants cannot serve as consideration for the Agreement. The Agreement is therefore voidable as a matter of law and equity.

As explained in Williston on Contracts,

> One common illustration of the insufficiency of such a promise as consideration is the agreement to buy or sell goods where the quantity is to be fixed by the wishes of one of the parties. A promise to buy such a quantity of goods as the buyer may thereafter order, or to take goods in such quantities as the buyer may desire or want, is not consideration for the seller's promise to sell since the buyer may refrain from buying at its option and do so without incurring legal detriment to itself or benefiting the other party. Similarly, if the seller promises to sell in such quantity as it desires, consideration will likewise be lacking. Where, however, the bargain relates to specific goods, and the buyer promises to buy all that the seller desires to sell or may be willing to ship or any surplus of specified goods, a promise may fairly be implied that the seller will sell only to this buyer, thereby creating a valid output or, depending on the language used, requirements contract. In such a case, though the seller at common law might refrain at its option from selling altogether, refraining from selling to others would be a legal detriment. Under the Uniform Commercial Code, the seller would be obligated, at a minimum, to use good faith so that its ability to avoid the undertaking is not solely within its control.

§ 7:7. Consideration and meaning of benefit and detriment—Non-detrimental and non-beneficial promises; illusory promises, 3 Williston on Contracts § 7:7 (4th ed.)(citations omitted).

Where a pandemic was underway and where the need for the gloves was immediate and where time was of the essence, Defendant took the money with no required contractual date to deliver the goods (notwithstanding, Plaintiff argues there was an agreed upon date, but it does not appear in the Contract). Performance without a date in the Contract, rendered performance solely at the whim of the Defendant, with the ability to continually kick the can down the road. This illusory contract is further illustrated by the Declarations of Schmidt and Cervera. Individual Defendants Schmidt and Cervera provided DHL tracking information to Plaintiff on January 29,

2021, to track incoming product with an estimated time of arrival on March 20, 2021 **[Doc. 16-1, ¶ 19; Doc. 16-9, ¶ 16]**. However, Individual Defendants Schmidt and Cervera both admitted that the shipment that arrived in March 2021 had not been allocated to Bluhorne, which meant that the DHL tracking information provided in January was not even a shipment for Plaintiff **[Doc. 16-1, ¶ 30; Doc. 16-9, ¶ 25].** The only product that was ever produced to Plaintiff was the mere 66,000 boxes of gloves in May, 2021, which all turned out to be defective.

Simply looking at the timeline is also illustrative, Individual Defendant Schmidt represented to Protective Shield that it could provide two million boxes of gloves to Plaintiff, and that it was receiving a continual supply of two million boxes per week. Defendant Bluhorne represented to Plaintiff it could provide Plaintiff two million boxes of gloves to Plaintiff through the ICPO and the Agreement. Individual Defendant Schmidt represented to Plaintiff that the shipment would be available on December 28, but the requirement was removed from the Contract, and the delivery never happened. Individual Defendant Schmidt represented to Plaintiff that the shipment would be available by January 9, 2021 – that never happened. Individual Defendant Schmidt again represented the delivery, the reduced 500,000 boxes, would be available on January 10, 2021 – that never happened [**Doc. 1; Doc. 18-16; Doc. 18-23**]. Defendant produced fraudulent BOLs. [Doc. 1]. If the BOLs were not fraudulent, then Plaintiff would have inspected the boxes in January and would have received the goods in January. In fact, the BOLs provided by Bluhorne were not only confirmed to be fake by Matson, the shipping company, but by Donavin Heard from K.I. Enterprises. Attached hereto as **Exhibit 1** is a true and accurate copy of Donavin Heard's BOL Review dated July 15, 2021; *see* **[Doc. 18-23, ¶¶ 23-24].** Donavin's report found that the BOLs provided to the Company by Bluhorne were fake based on numerous factors, including:

- The inability to match the BOL in Matson's tracking system

- The vessel on the BOL provided does not match the vessels/dates in the Matson tracking system

- The font types do not match and have been altered

- The weight and measurement information are the same despite 50% more product on BOL #9632289 vs BOL #9632281

Specifically, one of the BOLs booking number was not in the Matson Tracking System, and the other BOLs booking number tracked the container on a vessel named Navos Verano whereas the vessel that was named on the BOL was Kimana Hila. *Id.* The inconsistent shipping information shows that no shipment was in existence. The creation of fraudulent Bills of Lading was simply another artifice of the Defendants to perpetuate the illusory promise of providing gloves.

Such whim of the Defendant is further illuminated by Defendant not making any boxes available for inspection until May 11, 2021, 134 days after Plaintiff anticipated receiving the boxes, and 2 ½ months after the initiation of this lawsuit. Even then, only 66,000 boxes were provided and all of these boxes were found defective. When would the remainder be delivered or available? Whenever Defendant Bluhorne might get around to it, continuing to kick the can or delivery down the road, with continued promises of tomorrow.

## II. The Voidability of the Contract is a Matter for an Arbitrator to decide.

The FAA expressly provides that arbitration agreements are revocable "upon such grounds as exist at law **or in equity** for the revocation of any contract." 9 U.S.C. § 2. The issue of "whether a valid written agreement to arbitrate exists" is controlled by principles of state contract law:

> Although the states may not impose special limitations on the use of arbitration clauses, *the validity of an arbitration clause is nevertheless an issue of state contract law.* Section 2 states that an arbitration clause can be invalidated on such grounds as exist "at law or in equity for the revocation of a contract." Thus, *an arbitration clause can be defeated by any defense existing under the state law of contracts.* As the [United States Supreme] Court explained in [*Doctor's*

*Associates, Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) ], "generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening [the Federal Arbitration Act]."

*Shotts v. OP Winter Haven, Inc.,* 86 So. 3d 456, 464 (Fla. 2011) (*citing Powertel, Inc. v. Bexley,* 743 So.2d 570, 574 (Fla. 1st DCA 1999)).

As stated, the FAA specifically contemplates that parties may seek revocation of an arbitration agreement "under 'such grounds that exist at law or in equity', including fraud, duress, and unconscionability." *Sydnor v. Conseco Fin. Servicing Corp.,* 252 F.3d 302, 305 (4th Cir. 2001) (*quoting* 9 U.S.C.A. § 2). A federal court may consider claims of fraud in the inducement "if the fraud relates specifically to the arbitration clause." *Id.* at 307; *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403-404 (1967) (Where the Supreme Court held that under the FAA, fraudulent inducement to enter into a contract is decided by the arbitrator.) Should the Arbitrator find that the Contract is Void, the claims asserted in the Complaint would return to this Court.

### III. The Individual Defendants Are Nonsignatories to the Arbitration Agreement and the Claims Against the Individual Defendants should be Brought Before this Court

While the issue of arbitrability of the Agreement between Defendant Bluhorne and Plaintiff is decided by the Arbitrator, as to whether there is an illusory contract, the claims against the Individual Defendants should remain before this Court. A "party ordinarily will not be 'compelled to arbitrate unless that party has entered into an agreement to do so.'" *World Rentals & Sales, LLC v. Volvo Const. Equip. Rents, Inc.,* 517 F.3d 1240, 1244 (11th Cir. 2008) (*citing Employers Ins. of Wausau v. Bright Metal Specialties,* 251 F.3d 1316, 1322 (11th Cir. 2001). A signatory can only bind a non-signatory to an arbitration agreement under these give theories: (1)

incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; and (5) estoppel. *Id.* Here, none of these theories exist.

While the Individual Defendants are members of Bluhorne (or at least Defendants Wright and Cervera are members), "the mere fact that the parties may be related does not necessarily lead to a conclusion that arbitration should be compelled" based on estoppel. *Am. Personality Photos, LLC v. Mason*, 589 F. Supp. 2d 1325, 1334 (S.D. Fla. 2008). The Individual Defendants' misrepresentations, fraudulent conduct, and egregious behavior fall outside of the Agreement with Bluhorne. The Individual Defendants' scheme, which led to the conversion of $5.25 million dollars, is a serious offense that falls outside of contract law. The Individual Defendants worked together in order to obtain and keep Plaintiff's deposit, analogous to someone selling a car they never owned in the first place. This Court should stay the present case, reserving its ruling on Default as to the Individual Defendants, until Defendant Bluhorne and Plaintiff arbitrate the issue of the voidability of the Contract in Florida.

## CONCLUSION

Plaintiff respectfully asks this Court to DENY Defendant's Motion to Dismiss Plaintiff's Complaint. Plaintiff respectfully requests that this Court not let the Individual Defendants out of default. Additionally, Plaintiff requests that this Court stay this matter pending Arbitration solely between Plaintiff and Defendant Bluhorne as to the voidability of the Contract. If Plaintiff is able to prevail on voiding the Contract, it would present such Award to this Court and proceed as to all claims against Defendant Bluhorne and damages against the defaulted Individual Defendants.

July 16, 2021                                                                                    **SMITH, CURRIE & HANCOCK LLP**

                                                                                                 s/ Matthew E. Cox
                                                                                                 Matthew E. Cox, Fed ID #7531

1325 Park Street, Suite 200
Columbia, SC  29201
(803) 999-1273
mecox@smithcurrie.com

*Attorneys for the Plaintiff*