UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-20043-KMM

EPLUNO GLOBAL SERVICES, LLC,
a Delaware limited liability company,

      Plaintiff,

v.

BLUHORNE, LLC, a Florida limited liability
company, REMINGTON SCHMIDT, individually,
KENLEY CERVERA, individually, and
TODD WRIGHT, individually,

      Defendants.
_____/

## MOTION TO DISMISS

Defendant Todd Wright ("Mr. Wright"), pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, hereby moves to dismiss the Complaint [DE 1] filed on February 24, 2021, by Epluno Global Services, LLC ("Plaintiff"), stating:

### PRELIMINARY STATEMENT

Plaintiff's Complaint fails to state a cause of action against Mr. Wright. *First*, the Complaint must be dismissed in its entirety because it is a quintessential shotgun pleading where every count includes and incorporates every preceding count and allegation. The Complaint also contains multiple counts against multiple defendants without specifying which defendant is responsible for an act or omission, or which defendant the claim is against. *Second*, Plaintiff's civil RICO claim fails as a matter of law because it is based on allegations of a single scheme with a single goal that involved only one victim and, therefore, fails to allege a pattern of racketeering activity or the existence of a RICO enterprise. Congress passed RICO legislation to

combat racketeering and organized crime, not to net one-time, garden-variety fraud like the one alleged here. If this is a RICO case, everything is a RICO case. *Third*, Plaintiff's fraudulent and negligent misrepresentation claims fail to allege any representation made by Mr. Wright upon which Plaintiff relied to its detriment. In fact, the Complaint expressly alleges that Plaintiff relied upon representations by Defendant Remington Schmidt, not Mr. Wright. *Fourth*, Plaintiff's breach of contract accompanied by fraudulent act must be dismissed because it is not a recognized cause of action under Florida law.[1]

## BACKGROUND

1. Plaintiff filed the Complaint on February 21, 2021.

2. The allegations in the Complaint stem from a contract executed between Plaintiff and Defendant Bluhorne, LLC ("Bluhorne") for the purchase and sale of Personal Protective Equipment ("PPE").

3. According to the Complaint:

- Plaintiff and Bluhorne entered into an agreement whereby Bluhorne would sell and deliver to Plaintiff 2 million boxes of nitrile exam gloves, at $10.50 per box, for a total of $21 million. *Id*. at ¶ 30.

- The contract required Plaintiff to make a $5.25 million deposit. *Id*.

- Plaintiff made the $5.25 million deposit on or about December 23, 2020. *Id*. at ¶¶ 35-39.

- Plaintiff was required to pay the $15.75 million balance within 24 hours of the PPE clearing customs. *Id*. at ¶ 34.

- The PPE was to arrive in the USA on or about December 28, 2020. *Id*. at ¶ 38.

---

[1] Paragraph 7(g) of the Agreement that is the subject of this action contains a choice of law provision, which requires the application of Florida law.

- Bluhorne failed to deliver the PPE and failed to return Plaintiff's deposit. *Id*. at ¶¶ 43-63.

4. All alleged pre-contractual negotiations and representations by Bluhorne were made by Defendant Remington Schmidt through a third-party broker, Kory McMullen. *Id*. at ¶¶ 23-29.

5. Importantly, the Complaint expressly alleges that Plaintiff executed the agreement based upon Defendant Schmidt's representations. *Id*. at ¶ 26 ("On December 17, 2020, Plaintiff, based upon Defendant Schmidt's representations and authentication of the SGS by Protective Shield, provided an irrevocable Corporate Purchase Order (ICPO) to Bluhorne through Kory McMullen.").

6. The Complaint does not allege that Mr. Wright made any pre-contractual representations upon which Plaintiff relied. *Id*., *generally*.

7. With respect to Mr. Wright, the Complaint makes only two allegations.

8. First, the Complaint alleges that the escrow agent disbursed the $5.25 million deposit to Mr. Wright, as agreed by Plaintiff. *Id*. at ¶ 37 (alleging that the funds were released from escrow to Mr. Wright, as agreed by Plaintiff).

9. Second, the Complaint alleges that, on January 7, 2021 (which is almost three weeks after the parties executed the agreement), Mr. Wright sent Plaintiff's lawyer two bills of lading that Plaintiff claims had been altered. *Id*. at ¶ 53 ("Thus on January 7, 2021, Defendant Wright for Defendant Bluhorne, via the internet, provided Bills of Lading ("BOL"), which on their face appeared legitimate, however the BOLs had in fact been altered and were merely artifices created to defraud and further the scheme of the Defendants.").

10. The Complaint does not allege that Mr. Wright altered the bills of lading or that he knew or should have known that the bills of lading had been altered.

11. Based on those allegations, Plaintiff asserts seven causes of action: civil RICO in violation of 18 U.S.C. § 1962(c); fraud in the inducement; negligent misrepresentation; breach of contract; breach of contract accompanied by a fraudulent act; unfair and deceptive trade practices; and conversion.

12. The Complaint must be dismissed in its entirety because it is a quintessential shotgun pleading where every count includes and incorporates every preceding count and allegation. In addition, the Complaint purports to assert multiple claims against multiple defendants without specifying which defendant is responsible for an act or omission, or which defendant the claim is against.

13. The civil RICO claim must be dismissed for the separate reason that it is based on allegations of a <u>single scheme</u> with a <u>single goal</u> that involved <u>only one victim</u> and, therefore, fails to allege a pattern of racketeering activity or the existence of a RICO enterprise.

14. The fraudulent inducement and negligent misrepresentation claims must be dismissed as against Mr. Wright because the Complaint fails to allege a pre-contractual representation by Mr. Wright upon which Plaintiff relied to its detriment. In fact, the Complaint expressly alleges that the representations upon which it relied were made by Defendant Remington Schmidt.

15. The breach of contract accompanied by fraudulent act must be dismissed because it is not a recognized cause of action in Florida.

<u>**MEMORANDUM OF LAW**</u>

**I.   <u>Plaintiff's Complaint must be dismissed in its entirety because it is a shotgun pleading</u>.**

The Eleventh Circuit has identified four types or categories of shotgun pleadings:

> The first is 'a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.' The second is a complaint that is 'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.' The third is a complaint that does not separate 'each cause of action or claim for relief' into a different count. And the final type of shotgun pleading is a complaint that 'assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.'

*Barmapov v. Amuial*, 986 F.3d 1321, 1324-25 (11th Cir. 2021) (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). Here, the Complaint filed by Plaintiff is a quintessential shotgun pleading that, at a minimum, falls into two of the four categories above. First, the Complaint contains multiple counts where each count adopts the allegations of all preceding counts. *See, e.g.*, Compl., ¶¶ 112, 117, 124 (beginning a count and adopting all preceding paragraphs). Second, the Complaint contains multiple counts against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. *Id*. at ¶¶ 66-129 (failing to identify which of the defendants each claim is against and referring generally to actions of "Defendants" without specifying which one). Accordingly, Plaintiff's Complaint should be dismissed in its entirety. If Plaintiff fails to remedy the aforementioned defects, Plaintiff's Complaint should be dismissed, with prejudice. *Barampov*, 986 F.3d at 1326 (affirming district

court's dismissal with prejudice of shotgun complaint where the district court dismissed initial complaint without prejudice and plaintiff failed to remedy shotgun pleading).

**II.     Plaintiff's RICO claim fails to state a cause of action.**

To sufficiently allege a RICO claim, "a plaintiff must plead (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1225 (11th Cir. 2002) (*citing* 18 U.S.C. § 1962 (a)-(c)).  Plaintiff's RICO claim must be dismissed because Plaintiff has not sufficiently pleaded a pattern of racketeering activity and because Plaintiff has not sufficiently pleaded the existence of a RICO enterprise.

A.   Plaintiff's allegations fail to establish a pattern of racketeering activity.

"Essential to any successful RICO claim are the basic requirements of establishing a RICO enterprise and a 'pattern of racketeering activity.'" *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004).  "To successfully allege a pattern of racketeering activity, plaintiffs must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a ***continuing*** nature." *Id*. (emphasis added).  Courts have repeatedly noted that "[t]he continuity element of a pattern of racketeering activity is crucial to a valid RICO claim in order to ensure that the crime alleged is the sort of offense that RICO is designed to address—one that is part of a pattern of ongoing, continuing criminality or that involves criminality that promises to continue into the future." *Id*. at 1265; *Millete v. DEK*

*Techs., Inc.*, Case No. 08-60639, 2008 WL 5054741, at *2 (S.D. Fla. Nov. 25, 2008) (same); *Ward v. Nierlich*, 617 F. Supp. 2d 1226, 1236 (S.D. Fla. 2008) (same).

"'Continuity' of the racketeering activity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Jackson*, 372 F.3d at 1265 (*citing H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241-42 (1989). To establish closed-ended continuity, a RICO plaintiff must allege "a series of related predicates extending over a substantial period of time." *Id.*; *Millete*, 2008 WL 5054741, at *4 ("To allege a close-ended RICO violation, Plaintiff must allege a series of related predicates extending over a substantial period of time."). To establish open-ended continuity, a RICO plaintiff must allege that "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future," or that "the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Jackson*, 372 F.3d at 1265 (*citing H.J. Inc.*, 492 U.S. at 241-42) (emphasis added); *Millete*, 2008 WL 5054741, at *3 (same).

Here, Plaintiff's allegations fail to establish either closed- or open-ended continuity. Plaintiff's allegations fail to establish open-ended continuity because the entire Complaint describes the scheme in the past tense and there is not a single allegation regarding a threat of repetition extending indefinitely into the future. *Id.* (holding plaintiff failed to allege open-ended continuity where complaint failed to allege threat of repetition). Second, there is no allegation that the entity is ongoing or that this was the entity's regular way of doing business because the Complaint alleges that Defendants conspired only to steal from Plaintiff. *Ramos v. Ocean Bank*, Case No. 16–22314, 2016 WL 10891637, at * 3 n. 1 (S.D. Fla. Dec. 8, 2016) (holding that

plaintiff failed to allege open-ended continuity where plaintiff failed to allege any facts showing defendants engaged in the type of conduct complained of with any other person or otherwise demonstrate Defendants engaged in this behavior in the ordinary course).

The question, then, is whether Plaintiff has sufficiently alleged closed-ended continuity. They have not. Nor can they ever. Courts in this Circuit and elsewhere have repeatedly held that allegations of a single scheme with a discrete goal and few victims cannot establish closed-ended continuity. That is exactly what Plaintiff has alleged here. Specifically, Plaintiff alleges:

- "Defendants Wright, Cervera, and Schmidt collectively worked together through the entity Bluhorne to scheme, defraud and convert the property *of Plaintiff* for their own purpose in violation of the law." Compl., ¶ 21 (emphasis added).

- "Defendant Remington Schmidt, Todd Wright and Kenley Cervera devised *a scheme* to conduct and participate therein, for the purpose of wrongfully obtaining monies *from Epluno Global Services, LLC* . . . ." *Id*. at ¶ 67 (emphasis added).

- "Defendants Schmidt, Wright and Cervera have engaged in a pattern of racketeering activity for the unlawful *purpose of intentionally defrauding Epluno Global Services, LLC*." *Id*. at ¶ 68 (emphasis added).

- "Defendant Wright did arrange to receive the deposits from escrow in furtherance of *the scheme*." *Id*. at ¶ 71 (emphasis added).

- "Defendants Schmidt, Wright and Cervera did agree to and did conduct and participate in such conduct of the Defendant Enterprise's affairs through a pattern of racketeering activity for the unlawful purpose of intentionally *defrauding Plaintiffs* [sic]." *Id*. at ¶ 73 (emphasis added).

- "Pursuant to and in furtherance of their fraudulent *scheme* . . . ." *Id*. at ¶ 76 (emphasis added).

Without question, the Complaint alleges just one scheme with only one victim (Plaintiff) and a discrete goal (to steal from Plaintiff). That is insufficient to establish closed-ended continuity. The cases are legion. *See, e.g., Jackson*, 372 F.3d at 1267 (affirming district court's dismissal of RICO claims where, as here, the complaint alleged a single scheme with a narrow

goal); *Ferrell v. Durbin*, 311 Fed. App'x 253, 256 (11th Cir. 2009) (affirming district court's dismissal of complaint where, as here, RICO allegations involved two victims and single scheme); *Daedelus Capital, LLC v. Vinecombe*, 625 Fed. App'x 973, 976 (11th Cir. 2015) ("Appellants cannot establish either form of continuity. They cannot show closed-ended continuity because there is only one victim . . . and only a single scheme with a discrete goal connecting the predicate acts . . . Nor can they show open-ended continuity because there is no threat of continuing criminal activity.") (internal citations and quotations omitted); *Millete*, 2008 WL 5054741, at *4 (granting defendants' motion to dismiss RICO claims for lack of closed-ended continuity where, as here, the complaint alleged "one scheme used to accomplish a discrete goal"); *Ward*, 617 F. Supp. 2d at 1237 ("[I]n cases like this one, where the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time.") (internal citations and quotations omitted); *Ramos*, 2016 WL 10891637, at * 2 ("Whether the RICO violations are premised on closed-ended or open-ended continuity, allegations concerning a single scheme with a discrete goal fail to satisfy the continuity requirement.") (internal quotations omitted); *Efron v. Embassy Suites (P. R.), Inc.*, 223 F.3d 12, 18 (1st Cir. 2000) (noting that "the fact that a defendant has been involved in only one scheme with a singular objective and a closed group of targeted victims" supports the conclusion that there is no continuity); *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) (holding predicate acts occurring over three year period insufficient to allege pattern of racketeering where complaint alleged a single scheme with a single goal). Accordingly, Plaintiff's RICO claim fails to state a cause of action and must be dismissed, with prejudice.

B. Plaintiff's allegations fail to establish the existence of RICO enterprise.

A RICO enterprise exists "'where a group of persons associates, formally or informally, with the purpose of conducting illegal activity.'" *Jackson*, 372 F.3d at 1264 (*citing United States v. Hewes*, 729 F.2d 1302, 1311 (11th Cir. 1984)). The enterprise, however, must be "an entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Put differently, and as this Court has previously held, "[a] RICO enterprise cannot be a group simply conspiring to commit *a fraud*, that is not enough to trigger the Act." *Millete*, 2008 WL 5054741, at *4 (dismissing RICO claims where "the alleged 'enterprise' was a group simply conspiring to commit a single fraud and not functioning as a racketeering organization") (emphasis added). Not only that, where RICO claims are founded on commercial relationships, as they are here, "the [p]laintiff should plead *facts* dispelling the notion that the different parties entered into the alleged agreements for their own gain or benefit." *Millete*, 2008 WL 5054741, at *4 (emphasis added).

Here, Plaintiff's enterprise allegations again fail on both fronts. First, Plaintiff expressly alleges that the defendants associated only for this project -- *i.e.*, to commit a single fraud against Plaintiff, not to mount a racketeering enterprise. *See, e.g.*, Compl., ¶ 21 ("Defendants Wright, Cervera, and Schmidt collectively worked together through the entity Bluhorne to scheme, defraud and convert the property *of Plaintiff* for their own purpose in violation of the law.") (emphasis added). Second, the Complaint fails to contain any allegation whatsoever to dispel the notion that the parties were acting solely for their own individual benefit, as required to state a civil RICO claim. *See, generally*, Compl. Because Plaintiff alleges that the defendants conspired only to steal from Plaintiff and because Plaintiff has failed to allege facts to dispel the

notion that the defendants were acting for their own financial gain, Plaintiff has failed to sufficiently plead the existence of a racketeering enterprise, and the RICO claim should be dismissed, with prejudice. Simply put, Plaintiff alleges one scheme, with one goal, one victim, and one transaction. Under those circumstances, Plaintiff cannot state a civil RICO claim. If this is RICO, everything is RICO.

### III. Plaintiff's fraudulent inducement claim must be dismissed against Mr. Wright.

To state a claim for fraudulent inducement against Mr. Wright under Florida law, Plaintiff must allege sufficient facts showing that: "(1) [Mr. Wright] made a false statement concerning a material fact; (2) [Mr. Wright] knew the misrepresentation was false; (3) [Mr. Wright] intended the misrepresentation to induce [Plaintiff's] reliance; and (4) [Plaintiff] was injured by his reliance on the misrepresentation." *Azar v. Nat'l City Bank*, 382 Fed. App'x 880, 885 (11th Cir. 2010); *Biscayne Inv. Group, Ltd. v. Guarantee Mgmt. Servs., Inc.*, 903 So. 2d 251, 255 (Fla. 3rd DCA 2005) ("In order to state a cause of action for fraud in the inducement, a plaintiff must allege that 1) the representor made a misrepresentation of a material fact, 2) the representor knew or should have known of the falsity of the statement, 3) the representor intended that the representation would induce another to rely and act on it, and 4) the plaintiff suffered injury in justifiable reliance on the representation.").

Here, Plaintiff alleges that the offending misrepresentation was that "the Defendants was [sic] ready, willing and able to deliver the PPE, having access to 2,000,000 boxes of Medcare Nitrile Gloves that were to arrive on December 28, 2020." Compl., ¶ 82. The Complaint, however, expressly alleges that the representation was made by Remington Schmidt -- not Mr. Wright. *Id*. at ¶¶ 21-25 ("Specifically, on or about December 1, 2020 [sic] ***Defendant Schmidt***

*represented* to Bill Banham of Protective Shield that he had 4 million boxes of Medcare Nitrile Gloves, with 50 more weeks of product arriving at 2 million boxes per week. On December 16, 2020, ***Defendant Schmidt represented*** to Kory McMullen, Chief Executive Officer for Protective Shield and a broker representing the Defendants, that Defendant Bluhorne did in fact have PPE and Bluhorne provided an SGS, which was authenticated by a third-party. At all times material hereto, Protective Shield contacted Plaintiff and communicated ***Defendant's Schmidt's representations***.") (emphasis added). Not only that, but the Complaint also expressly alleges that Plaintiff acted in reliance upon those representations made by Remington Schmidt. *Id*. at ¶ 26 ("On December 17, 2020, Plaintiff, ***based upon Defendant Schmidt's representations*** and authentication of the SGS by Protective Shield, provided an Irrevocable Corporate Purchase Order (ICPO), to Bluhorne through Kory McMullen.") (emphasis added).

In fact, the Complaint is devoid of a single representation by Mr. Wright, let alone a representation that pre-dated Plaintiff's alleged injury or one upon which Plaintiff relied to its detriment. The only action attributable to Mr. Wright alleged in the Complaint is that, on January 7, 2021, Mr. Wright sent Plaintiff's lawyer a bill of lading that had allegedly been altered. *Id*. at ¶ 52 ("Thus on January 7, 2021, Defendant Wright for Defendant Bluhorne, via the internet, provided Bills of Lading ("BOL"), which on their face appeared legitimate, however the BOLs had in fact been altered and were merely artifices created to defraud and further the scheme of the Defendants."). However, Plaintiff had signed the agreement and transferred its funds at least two weeks earlier, so it could not have possibly relied on Mr. Wright's email to do so. In addition, the Complaint fails to allege that Mr. Wright knew the bills of lading were inaccurate. Accordingly, Plaintiff fails to allege that Mr. Wright made a misrepresentation that

induced it into the contract or that Plaintiff relied upon such a representation and, therefore, Plaintiff's fraudulent inducement claim against Mr. Wright must be dismissed.

IV. **Plaintiff's negligent misrepresentation claim fails to state a cause of action against Mr. Wright.**

"To state a cause of action for negligent misrepresentation in Florida, a plaintiff must allege: '(1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation.'" *McGee v. JPMorgan Chase Bank, N.A.*, 520 Fed. App'x 829, 832 (11th Cir. 2013) (citing *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004). "Further, because negligent misrepresentation sounds in fraud, the facts surrounding the claim must be pled with particularity." *McGee*, 520 Fed. App'x at 832 (citing *Ostreyko v. B.C. Morton Org., Inc.*, 310 So. 2d 316, 318 (Fla. 3d DCA 1975) ("In this state, a negligent misrepresentation is considered tantamount to actionable fraud."). "Plaintiffs must therefore allege '(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.'" *FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).

Here, again Plaintiff alleges that the offending misrepresentation was that "Defendant made false representations to Plaintiff that it had 2,000,000 MedCare Nitrile Gloves arriving in

port at Long Beach California on December 28, 2020, that it would sell to Plaintiff." Compl., ¶ 94. As explained in the preceding section, however, Plaintiff expressly alleges in Paragraphs 23 through 25 that those representations were made by Remington Schmidt, not Mr. Wright. Not only that, in Paragraph 26, Plaintiff expressly alleges that it acted in reliance upon Remington Schmidt's representations in Paragraphs 23 through 25. There is not a single allegation of a representation by Mr. Wright upon which Plaintiff relied to its detriment. Again, the only conduct allegedly attributable to Mr. Wright is the January 7 email, which Mr. Wright sent two weeks after Plaintiff executed the agreement and transferred funds. And, there is no allegation that Mr. Wright knew or should have known that the bills of lading had been altered. Accordingly, Plaintiff's negligent misrepresentation claim fails to state a cause of action against Mr. Wright and must be dismissed.

### V. Plaintiff's breach of contract accompanied by fraudulent act claim must be dismissed because it is not a recognized cause of action in Florida.

Paragraph 7(g) of the agreement that is the subject of this action contains a choice of law provision, indicating that Florida law applies. Breach of contract accompanied by a fraudulent act is not a recognized cause of action in Florida. Accordingly, the claim must be dismissed with prejudice.

### CONCLUSION

WHEREFORE, Mr. Wright respectfully requests that the Court enter an Order, dismissing Plaintiff's Complaint.

**THE FERRO LAW FIRM**
ATTORNEYS AT LAW
1 ALHAMBRA PLAZA ∥ SUITE 1225 ∥ CORAL GABLES, FLORIDA ∥ 33134

Respectfully submitted,

**THE FERRO LAW FIRM, P.A.**
1 ALHAMBRA PLAZA, SUITE 1225
CORAL GABLES, FLORIDA 33134
OFF. (305) 448-1033
CELL. (305) 984-8892
EMAIL. SIMON@THEFERROFIRM.COM
ALT. EMAIL. FERRO.SIMON@GMAIL.COM


BY: /s/ *Simon Ferro*
     SIMON FERRO
     FLORIDA BAR NO. 37014

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on February 24, 2022, I caused the foregoing document to be filed with the Clerk of the Court *via* CM/ECF. I also certify that the foregoing document is being served this day on all parties and/or counsel of record *via* transmission of Notices of Electronic Filing generated by CM/ECF.

/s/    Simon Ferro
     Simon Ferro